UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVENNE RODRIGUEZ,<br><br>　　　　　　Petitioner,<br><br>　　v.<br><br>DAVID DAVEY,<br><br>　　　　　　Respondent. | No. 2:16-cv-0794 JAM KJN P<br><br>FINDINGS & RECOMMENDATIONS |

I. Introduction

Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2013 conviction for first degree murder during a robbery or attempted robbery. Petitioner claims that (1) the trial court's in limine ruling prior to witness Mondello's testimony prevented her from giving truthful and complete testimony, in violation of petitioner's rights to present a defense and confront witnesses against him; and (2) appellate counsel was ineffective because he failed to argue that the trial court abused its discretion and improperly limited Mondello's testimony. After careful review of the record, this court concludes that the petition should be denied.

II. Procedural History

Before petitioner's 2013 jury trial with co-defendant Miles, petitioner was initially tried separately because Miles could not be located at that time. (Reporter's Transcript ("RT") 945.)

1

Petitioner took the stand in his first trial and it appears that both he and Mondello suggested that Miles was the shooter. (Clerk's Transcript ("CT") 345-68; RT 953.) A mistrial was declared following an 11-1 vote. (ECF No. 1 at 5.)

Subsequently, Miles was located and his criminal case was consolidated with petitioner's. (CT 11.) On July 9, 2013, a jury found petitioner guilty of first degree murder and the commission or attempted commission of robbery. (CT 315-16; 415.) On August 30, 2013, petitioner was sentenced to life without the possibility of parole plus a one-year determinate term for being armed. (CT 415.) At some point Miles pled nolo contendere to second degree murder. (ECF No. 12-1 at 2 n.1.)

Petitioner appealed the conviction to the California Court of Appeal, Third Appellate District; the Court of Appeal affirmed the conviction on July 27, 2015. (Respondent's Lodged Documents ("LD") No. 9.) Appellate counsel filed a petition for review in the California Supreme Court, which was denied on September 30, 2015, without comment. (LD Nos. 10, 11.)

On December 24, 2015, petitioner filed a pro se petition for writ of habeas corpus, raising his two instant claims, in the California Supreme Court. (LD No. 12.) On March 23, 2016, the California Supreme Court denied the petition without comment. (LD No. 13.)

Petitioner filed the instant petition on April 18, 2016. (ECF No. 1.)

III. Facts[1]

In its unpublished opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> FACTUAL AND PROCEDURAL BACKGROUND
>
> Around August 19, 2011, one week before the murder, defendant began dating Cherah Mondello. She was living in an apartment complex on 47th Avenue in Sacramento. About a week before they started dating (two weeks before the murder), Mondello and defendant were at the apartment of Mondello's friend, who lived in the same apartment complex. Mondello saw defendant in her friend's

---

[1] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Rodriguez, No. C074639 (July 27, 2015), a copy of which was filed by respondent (ECF No. 12-1).

2

closet with a revolver.

Mondello knew defendant's friend Miles. Since defendant did not have a car, Miles would sometimes give defendant a ride in his silver Lexus.

Mondello had a daughter named A. A.'s best friend Alexis lived in the same apartment building as Mondello and A. Alexis was 15. Alexis saw defendant at A.'s house every other day. Alexis would drink and smoke marijuana with defendant. Alexis had known the victim, twenty-year-old Adrian Augusta, a year or two, and she purchased marijuana from him.

Around 11:00 p.m. on August 25, 2011, Alexis was at A.'s apartment with Mondello and defendant. They were all smoking marijuana, and she, A., and defendant were also drinking alcohol. At some point, Mondello left. They ran out of marijuana, so Alexis called Augusta and told him one of her friends was trying to get some marijuana. Augusta told Alexis to give her friend his number. Alexis gave defendant Augusta's phone number so he could purchase more marijuana for her, and watched as defendant called Augusta. He used a gray Android phone. Alexis gave defendant $10 to buy the marijuana. Defendant left the apartment, and got into a white, four-door car.

Augusta was at home with his younger brother until about 12:15 a.m. Augusta said he was going to go "sell some weed around the corner." Augusta left carrying his burgundy Kyocera cell phone and a dime bag of marijuana. At 12:16 a.m., Augusta sent a text to Alexis, telling defendant to hurry up because he would be going to sleep in a minute and not coming out.

Around 12:45 a.m. Anna Carillo, who lived on the corner of 43rd Street and 37th Avenue, heard what sounded like a firecracker and looked out her bedroom window. She saw what looked like a large bag fall into the gutter. Someone ran from the area of what she thought was the bag and got into a gold-brown car. The car sped off. Carillo later identified pictures of Miles's car as similar to the gold car she saw, although she thought the car looked darker when she saw it at night. She went to the bag in the gutter and discovered it was a body. She went back into the house and called 911. Before the emergency personnel arrived, she watched from the house as a white car pulled up. It stopped for about two minutes, then sped off.

When defendant went back to Alexis he was sweating and looked upset. He was carrying a burgundy Kyocera cell phone. He said, "I shot that nigga blood. Don't text his phone. Don't call him. Don't do nothing." Then defendant left, and Alexis never saw him again.

Mondello had gone out that evening with a friend in the friend's white BMW. Mondello was with her friend at a bar when she received a call from defendant sometime after midnight telling her she needed to come home now. Defendant sounded anxious. Mondello took her friend's white BMW, leaving her friend at the bar. After she picked defendant up, they drove by the dead body, where

3

defendant got out of the car and went over to the body before getting back into the car.

Emergency personnel discovered Augusta's body lying face-down in the street with his shorts pulled down to mid-thigh, exposing his buttocks. There was no wallet or any other property on the body. A baggie containing marijuana was discovered on a sidewalk about 25 feet from the body in a very dark area. No shell casings were found, indicating the gun used was a revolver, rather than a semi-automatic.

The cause of Augusta's death was a gunshot wound to the back, which severed the spinal cord and lodged in the neck, instantly rendering Augusta a quadriplegic, and resulting in death within a few minutes.

Later that day, at 11:34 a.m., Miles sent a text message to defendant that said "I already checked dat nigga."[FN 2] Defendant replied, "Whts goin on brah[?]" Miles replied, "Everything good bru just layin low you good tho."

   [FN 2: Detective Stanley Swisher testified this most likely meant "I put that person in place or I've checked that person, that everything is all good with that person over there."]

At 1:54 p.m., defendant sent the following text message to Alexis: "Please man do exactly wht I said and erase my text and shit ok please and b coo nigga." Seven minutes later, defendant sent Alexis another text that said, "I told u do not say shit at all dnt even bring me up itll b good ok ull b fine just listin please."

(People v. Rodriguez, slip op. at 1-2.)

IV. Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
>    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

4

|   | determined by the Supreme Court of the United States; or |
|---|---|
|   | (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. |

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38, 44-45 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] Lockyer v.

---
[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

5

Andrade, 538 U.S. 63, 75 (2003); Williams v. Taylor, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. at 411. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its 'independent review of the legal question,' is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Richter, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication

6

or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, (2013) (citing Richter, 562 U.S. at 98). If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed de novo in federal court. Wiggins v. Smith, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. This court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 101. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

////

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006).

V. Petitioner's Claims

    A. First Claim: Ruling on Motion in Limine

Petitioner alleges that the trial court's in limine ruling precluded Mondello from giving the same testimony she gave at petitioner's prior trial where a mistrial was declared. (ECF No. 1 at 5.) He argues that the exclusion of Mondello's prior testimony violated petitioner's constitutional right to present a defense and to confront the witnesses against him because Mondello's truthful testimony at the first trial resulted in a mistrial. Petitioner contends that Mondello should have been allowed to testify that petitioner wanted to return to the scene of the crime to check on the victim's condition in order to demonstrate petitioner's state of mind and negate the element of malice. (ECF No. 1 at 6-8.) Because the trial court excluded her prior testimony, petitioner argues that Mondello falsely testified that petitioner did not talk to her during their drive to the crime scene or tell her why he wanted to return to the crime scene. (Id.) In addition, the prosecution, in closing arguments, argued that Mondello was not a credible witness because it was unlikely there were no discussions in the car. (ECF No. 1 at 7.)

Petitioner further contends that this court must obtain the transcript of Mondello's testimony given at petitioner's first trial to fairly determine whether the exclusion had a substantial and injurious effect on the verdict. (ECF No. 14 at 5.)

Respondent counters that petitioner's claim that the trial court's admonishments erroneously resulted in the exclusion of evidence fails because it is based on violations of state law which are not cognizable on federal habeas review. Further, respondent argues that the state court's rejection of petitioner's evidentiary claim did not offend clearly established United States Supreme Court precedent. (ECF No. 12 at 17-18.) Finally, even if the trial court committed constitutional error, respondent argues that petitioner failed to show that such error had a substantial and injurious effect or influence on the jury's verdict. (ECF No. 12 at 20.)

8

### 1. State Court's Decision

Because petitioner's claims were first presented in the petition for review filed in the California Supreme Court, and the claims were denied without comment, there is no reasoned rejection of petitioner's first claim. Thus, as set forth above, the undersigned independently reviews the record to determine whether habeas corpus relief is available under § 2254(d) by determining whether the state court decision is objectively unreasonable. Stanley, 633 F.3d at 860; Himes, 336 F.3d at 853. This court reviews the trial court record to find what theories or arguments could have supported the rejection, and then consider "whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent" with prior Supreme Court holdings. Richter, 562 U.S. at 101. Petitioner bears the burden to show there was no reasonable basis for the state court's denial. Id. at 98.

### 2. Governing Standards

Federal habeas relief is not available for errors in the interpretation or application of state law; and a state evidentiary ruling does not give rise to a cognizable federal habeas claim unless the ruling violated a petitioner's due process right to a fair trial. Estelle v. McGuire, 502 U.S. 62, 70 (1991); Rhoades v. Henry, 638 F.3d 1027, 1034 n.5 (9th Cir. 2011) (state evidentiary rulings cannot form independent basis for federal habeas relief, citing Estelle).

However, under the Sixth and Fourteenth Amendments, "[t]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (citations and internal quotation marks omitted)). This includes the right of a criminal defendant to present witnesses in one's defense, Chambers v. Mississippi, 410 U.S. 284, 302 (1973), as well as the right to be confronted with the witnesses against him, Crawford v. Washington, 541 U.S. 35, 42 (2004). The right of confrontation "means more than being allowed to confront the witness physically." Davis v. Alaska, 415 U.S. 308, 315 (1974). Indeed, the "main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination*." Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986) (quoting Davis, 415 U.S. at 315). "Cross-examination is the principal means by which the believability of

9

a witness and the truth of his [or her] testimony are tested." Davis, 415 U.S. at 316. When evidence is excluded on the basis of a state evidentiary rule, such exclusion may violate due process if the evidence is sufficiently reliable and critical to the defense. See Chambers, 410 U.S. at 302-03 (when a hearsay statement bears "persuasive assurances of trustworthiness" and is critical to the defense, it may not be excluded by a "mechanistic" application of state hearsay rules.) See also United States v. Evans, 728 F.3d 953, 966 (9th Cir. 2013) (stating that the Ninth Circuit has found violations of the constitutional right to present a defense where the trial court incorrectly excluded evidence that was necessary for the defendant to refute a critical element of the prosecution's case) (internal citation omitted); Cudjo v. Ayers, 698 F.3d 752, 754 (9th Cir. 2012) (noting that Chambers clearly established that the "exclusion of trustworthy and necessary exculpatory testimony at trial violates a defendant's due process right to present a defense").

On the other hand, a criminal defendant "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." Taylor v. Illinois, 484 U.S. 400, 409-10 (1988); Moses v. Payne, 555 F.3d 742, 757 (9th Cir. 2009) (as amended) (right to present evidence is subject to "reasonable restrictions"). States have considerable latitude under the Constitution to establish rules excluding evidence from criminal trials. Holmes, 547 U.S. at 324. "Thus, a trial judge may exclude or limit evidence to prevent excessive consumption of time, undue prejudice, confusion of the issues, or misleading the jury. The trial judge enjoys broad latitude in this regard, so long as the rulings are not arbitrary or disproportionate." Menendez v. Terhune, 422 F.3d 1012, 1033 (9th Cir. 2005) (citations omitted); see Montana v. Egelhoff, 518 U.S. 37, 42-43 (1996) (holding due process rights are not violated by exclusion of relevant evidence where probative value is outweighed by danger of prejudice or confusion). Furthermore, the Supreme Court has stated that "[o]nly rarely have we held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." Nevada v. Jackson, 569 U.S. 505, 509 (2013) (citations omitted). The Ninth Circuit has noted that "under AEDPA, even 'clearly erroneous' evidentiary errors 'that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by "clearly established federal law," as laid out by the Supreme Court.'"

Hale v. Cate, 530 F. App'x 636, 637 (9th Cir. 2013) (quoting Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009)). Federal habeas relief is warranted only if the exclusion of evidence significantly undermined a fundamental element of the defense. See Moses, 555 F.3d 742 at 757.

Finally, trial error is subject to harmless error analysis, and a federal court may not grant habeas relief unless the court has "grave doubt" about whether an error had "a substantial and injurious effect or influence in determining the jury's verdict." Davis v. Ayala, 135 S. Ct. 2187, 2198 (2015); Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (even if state court does not apply the test for assessing prejudice under federal standards, the Brecht standard applies uniformly in federal habeas corpus cases under § 2254); Ocampo v. Vail, 649 F.3d 1098, 1114 (9th Cir. 2011) (Brecht analysis applies to habeas corpus review of Confrontation Clause claims). See also Coleman v. Knipp, 454 F. App'x 628, 629-30 (9th Cir. 2011) (citing Moses regarding exclusion of expert testimony and, assuming constitutional error, analyzing harm under Brecht standard).

### 3. Trial Court's Admonishments to Mondello[3]

Before Mondello testified, and outside the presence of the jury, the trial judge inquired as to any Fifth Amendment concerns Mondello's counsel may have. (RT 626-29.) Following resolution of those concerns, counsel for petitioner's co-defendant Miles asked the trial court to admonish Mondello that she must not "mention anything that she doesn't have first-hand knowledge of," including any statement that Miles was the "real shooter," or to mention that Miles was in custody when Miles received a note from petitioner to deliver to Mondello. (RT 629-30.) The prosecution joined in the requests. (RT 630-31.) The trial court admonished Mondello that she could only testify to what she personally knows, not what she heard from someone else, and that she should not volunteer information but simply answer the question asked. (RT 632.)

---

[3] Earlier, the trial court inquired whether it would come up that a prior trial ended in mistrial; the prosecution asked that if a witness' prior testimony needed to be referred to, it be referred to as "a prior proceeding in which you testified under oath." (RT 25.) The trial court noted that in light of the press coverage, the court would not advise that there was a prior trial unless or until a witness brought it up, at which point the court would break and address it privately. (RT 25-26.)

4. Analysis

Initially, the undersigned notes that relevant portions of Mondello's testimony at petitioner's first trial are appended to petitioner's motion for new trial. (CT 345-68.) For the reasons discussed below, it is unnecessary for this court to review the entire transcript from petitioner's prior criminal trial that ended in a mistrial.

Respondent is correct that "federal habeas relief does not lie for errors of state law." Estelle, 502 U.S. at 70, quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (state evidentiary ruling does not give rise to a cognizable federal habeas claim unless the ruling violated petitioner's due process rights). In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. Estelle, 502 U.S. at 67-68. The court's habeas powers do not allow for the vacatur of a conviction "based on a belief that the trial judge incorrectly interpreted the California Evidence Code in ruling" on the admissibility of evidence. Id. at 72.

Further, the Supreme Court has not yet "squarely addressed" whether a state court's discretionary exclusion of evidence can ever violate a defendant's right to present a defense. See Moses, 555 F.3d at 758-59 (considering challenge to state evidentiary rule allowing discretionary exclusion of expert testimony favorable to defendant); see also Brown v. Horell, 644 F.3d 969, 983 (9th Cir. 2011) (noting that no Supreme Court case has squarely addressed this issue since Moses). In addition, the Supreme Court has not clearly established a "controlling legal standard" for evaluating discretionary decisions to exclude the type of evidence at issue here. Moses, 555 F.3d at 758. Thus, the state court's denial of petitioner's claim could not have contravened clearly established federal law under AEDPA. Moses, 555 F.3d at 758.

In any event, the exclusion of the evidence here was not contrary to Chambers or Crawford because in those cases, unlike here, the excluded evidence was "critical" because the proffer was of a percipient witness whose testimony, if believed, would have exculpated the defendant. See United States v. Bowman, 215 F.3d 951, 962-63 (9th Cir. 2000) (explaining that evidence of third party culpability may properly be excluded "if it is insufficiently probative in light of its prejudicial effect under Rule 403). Federal law requires that a petitioner demonstrate

that the trial court excluded "trustworthy and necessary exculpatory testimony." Cudjo v. Ayers, 698 F.3d 752, 754 (9th Cir. 2012) (citing Chambers, 410 U.S. at 300-01). A petitioner must show that the excluded evidence was "inconsistent with" and "raise[d] a reasonable doubt of" his guilt. See Holmes, 547 U.S. at 327. Petitioner cannot meet this standard because Mondello was not a percipient witness; she did not witness the crime and did not offer trustworthy or necessary exculpatory testimony.

Moreover, the exclusion of Mondello's prior testimony was not arbitrary or disproportionate, but rather was precluded because the prior testimony included hearsay statements, were not trustworthy, and were not subject to any exception. Indeed, in ruling on petitioner's motion for new trial, the trial judge found Mondello's excluded testimony did not have "the indicia of reliability that most hearsay exceptions have. I mean somebody just shot somebody they have every incentive in the world to say it really wasn't me. And that's essentially what you're trying to offer." (RT 954.) Mondello was not a credible witness; she had a relationship with petitioner and her precluded statements were based on petitioner's alleged self-serving statements made to Mondello after the crime was committed, not based on information personally known to Mondello. Thus, her prior testimony was excluded based on a valid evidentiary rule, and, as such, its exclusion did not violate petitioner's right to present a defense or the Confrontation Clause. See Ohio v. Roberts, 448 U.S. 56, 63 (1980), abrogated on other grounds by Crawford, 541 U.S. at 36 ("The historical evidences leaves little doubt . . . that the [Confrontation] Clause was intended to exclude some hearsay."). In addition, Mondello was available for cross-examination, and defense counsel was free to cross-examine her as to evidence within her own knowledge.

Therefore, for all of the above reasons, the undersigned finds that the state court's silent rejection of petitioner's first claim was not objectively unreasonable. But even if the limits on Mondello's testimony were unreasonable, any error was harmless because the exclusion of Mondello's prior testimony did not substantially influence the jury's decision. See Brecht, 507 U.S. at 637; accord Fry, 551 U.S. at 116-17. Petitioner claims that the evidence was critical because it negated the element of malice, which he argues was significant to the special

circumstance finding.  But the jury found petitioner was armed with a firearm, and, specifically, that he shot the victim while engaged in the commission or attempted commission of a robbery.  (CT 312-16.)  As the trial judge explained while hearing petitioner's motion for new trial, if the jury found petitioner was the shooter, no special intent was required because the robbery supplied the intent under a theory of felony murder.  (RT 944.)  If the jury found petitioner was not the shooter, only then was the jury required to find petitioner had the intent to kill.  (Id.)  Thus, petitioner's mental state following his return to the crime scene had no bearing on whether or not he was the actual shooter.  Further, the jury apparently believed witness Alexis Jones who testified that about 20 to 30 minutes after petitioner had left to meet with the victim, petitioner returned, "just sweating," "looked like he was hecka hot," "hella red," looked upset, and said, "I shot that nigga blood.  Don't text his phone.  Don't call him.  Don't do nothing."  (RT 437.)  Thus, petitioner could not have suffered prejudice, under Brecht, by the exclusion of Mondello's hearsay statements provided to her by petitioner.

For all of the above reasons, petitioner is not entitled to habeas relief on his first claim.

B.  Second Claim:  Ineffective Assistance of Appellate Counsel

In his second ground for relief, petitioner claims that his appellate counsel rendered ineffective assistance in failing to raise petitioner's claim that the trial court erred in limiting Mondello's testimony.

1.  State Court Decision

Because there is no reasoned state court rejection of petitioner's second claim, the court performs an independent review of the record as explained above.

2.  Legal Principles: Ineffective Assistance of Counsel

The applicable legal standards for a claim of ineffective assistance of counsel are set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To succeed on a Strickland claim, a defendant must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense."  Id. at 687.  Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases."  Id. at 687-88 (internal

quotation marks omitted). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Richter, 131 S. Ct. at 787-88 (quoting Strickland, 466 U.S. at 687).

A reviewing court is required to make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 669; see Richter, 131 S. Ct. at 789. Reviewing courts must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. This presumption of reasonableness means that the court must "give the attorneys the benefit of the doubt," and must also "affirmatively entertain the range of possible reasons [defense] counsel may have had for proceeding as they did." Cullen v. Pinholster, 131 S. Ct. 1388, 1407 (2011) (internal quotation marks and alterations omitted).

Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. "The likelihood of a different result must be substantial, not just conceivable." Richter, 131 S. Ct. at 792. A reviewing court "need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Strickland, 466 U.S. at 697.

The Strickland standards apply to appellate counsel as well as trial counsel. Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989). In order to establish prejudice in this context, a petitioner must demonstrate that, but for counsel's errors, he would have prevailed on appeal. Id. at 1434 n.9.

### 3. Analysis

As discussed above, petitioner's claim that Mondello's testimony was improperly limited lacks merit. Accordingly, his appellate counsel did not render ineffective assistance in failing to raise the claim on appeal. An attorney's failure to raise a meritless claim on appeal does not

constitute ineffective assistance of counsel. Jones v. Smith, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) (citing Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985)). See also Rhoades, 638 F.3d at 1036 (counsel did not render ineffective assistance in failing to investigate or raise an argument on appeal where "neither would have gone anywhere"); Matylinsky v. Budge, 577 F.3d 1083, 1094 (9th Cir. 2009) (counsel's failure to object to testimony on hearsay grounds not ineffective where objection would have been properly overruled); Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996) ("the failure to take a futile action can never be deficient performance").

One of the claims raised on appeal by petitioner's appellate counsel was that there was insufficient evidence to prove petitioner intended to rob the victim prior to the act causing the victim's death. (ECF No. 1 at 25-28.) Appellate counsel's decision to raise this claim as opposed to petitioner's evidentiary claim does not constitute deficient performance and did not result in prejudice. In addition, as an indigent defendant, petitioner did not have a constitutional right to compel his appointed appellate counsel to press an issue when that counsel, as a matter of professional judgment, decided not to present such issue. See Jones v. Barnes, 463 U.S. 745, 751-54 (1983) (an experienced attorney knows the importance of "winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues"). "A brief that raises every colorable issue runs the risk of burying good arguments." Id. at 753.

Movant's appellate counsel raised at least one claim on appeal with more merit than a claim attacking the limit on Mondello's testimony. This court presumes that appellate counsel exercised his professional judgment to raise the issues on appeal that he considered to be the most meritorious. The state court's silent denial of petitioner's second claim was not objectively unreasonable; therefore, petitioner is not entitled to habeas relief on his claim of ineffective assistance of appellate counsel.

VI. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

////

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 13, 2019

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

rodr0794.157